The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Wanda Blanche Taylor and the briefs and oral arguments before the Full Commission. The appealing party has shown good ground to reconsider the evidence in this matter. Having reconsidered the evidence of record, the Full Commission Modifies and Affirms the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The employee is Pattie Christopher.
2. The employer is Cherry Hospital.
3. The day of the alleged injury by accident is June 3, 1998.
4. On June 3, 1998, the day of the alleged injury, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
5. An employee-employer relationship existed between plaintiff-employee, Pattie Christopher, and defendant-employer, Cherry Hospital.
6. Defendant-employer is self-insured.
7. Plaintiff's claim is for an alleged right knee injury.
8. The average weekly wage will be provided based on a Form 22 Wage Statement.
9. Plaintiff is claiming compensation in the form of temporary total disability from June 6, 1998 through June 11, 1998 and July 18, 1998 through September 22, 1998.
10. The parties stipulated into evidence as Stipulated Exhibit 1, without need for further authentication or verification, plaintiffs medical records from the following providers:
 Dr. Tejpal S. Dhillon, Dhillon Orthopaedic and Sports Medicine Center, Raleigh, North Carolina;
 Dr. William de Araujo, Goldsboro Orthopaedic Associates, P. A., Goldsboro, North Carolina; and
The recorded statement of Pattie Christopher.
11. The parties stipulated into evidence as Stipulated Exhibit 2, without need for further authentication or verification, plaintiff's 1998 time sheets from Cherry Hospital.
12. The parties stipulated into evidence as Stipulated Exhibit 3, without need for further authentication or verification, a Form 22 Wage Statement.
13. The parties stipulated into evidence as Stipulated Exhibit 4, without need for further authentication or verification, the statement of Annie Philyaw.
14. Plaintiff was out of work from June 6, 1998 through and including June 11, 1998 and from July 18, 1998 through and including September 22, 1998 because of her right knee condition. During these periods, plaintiff was out of work on paid vacation and sick leave.
15. At the hearing before the Full Commission, defendant's counsel was asked about restoring plaintiff's vacation and sick leave on a dollar-for-dollar basis to coincide with the credit given to defendant and he responded that that would be a fair and acceptable resolution.
 * * * * * * * * * * *
The Full Commission finds facts as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was a 35-year-old female employed with defendant-employer, Cherry Hospital, as a registered nurse, heading the children's unit.
2. On June 3, 1998, plaintiff was attending a required prevention-intervention class, which is an eight-hour block that she must attend once a year for recertification. This class teaches healthcare providers how to deal with aggressive patients. On that date, they were practicing upper bear hugs. Annie Philyaw, plaintiff's practice partner, played the part of the aggressive patient. Ms. Philyaw was behind the plaintiff and grabbed plaintiff in a bear hug. Plaintiff was required to lean backward, turn her head sideways and push the clinched hands of the patient up and over her own head as she walks forward and away from the patient. When plaintiff took one step her right knee and body collapsed.
3. Plaintiff had never experienced knee problems prior to her injury by accident.
4. Plaintiff completed the proper paperwork and properly reported her injury. Plaintiff's right knee condition worsened and she was out of work for seven days.
5. On June 11, 1998, plaintiff presented to Dr. Dhillon, an orthopedist. Plaintiff presented with signs and symptoms of a sprained right knee with questionable internal derangement and torn meniscus. Plaintiff was released to return to work at sedentary duty. Plaintiff returned to Dr. Dhillon on August 12, 1998, continuing to have knee pain and difficulty with stairs. Plaintiff was unable to squat or kneel. An MRI was performed on plaintiff on August 18, 1998, which revealed prominent linear internal signal of the posterior horn of the medial meniscus consistent with myxoid degeneration. Plaintiff was continued on conservative treatment.
6. Plaintiff was written out of work by Dr. William de Araujo from August 12, 1998 until August 28, 1998.
7. Plaintiff was again seen by Dr. Araujo on September 22, 1998, when she was released to return to regular work.
8. Plaintiff reached maximum medical improvement on September 22, 1998 and retained a 0% permanent partial disability of the right leg.
9. Plaintiff, at the time of her injury, was performing an unusual and different movement of the body. Plaintiff had never used this actual physical movement in her everyday work and furthermore this training was simulating the conditions of an "unlooked for and untoward event" and was an action which involved elements which were unlooked for and untoward, not expected or designed.
10. On June 3, 1998, plaintiff suffered a compensable injury by accident arising out of and in the course of her employment with defendant-employer, to wit, myxoid degeneration of the medial meniscus of her right leg.
11. Plaintiff's myxoid degeneration of her medial meniscus was a direct and proximate result of her June 3, 1998 compensable injury by accident.
12. As a direct and proximate result of her compensable injury by accident, plaintiff was unable to engage in physical activities required by her former job or any other job from June 6, 1998 through and including June 11, 1998 and from July 18, 1998 through and including September 22, 1998.
13. Plaintiff's time sheet from Cherry Hospital shows plaintiff using 27 days of sick leave and 25 days of vacation leave for the work missed due to her compensable injury by accident. These days were not employer-provided sick and disability payments, in that the days had already been earned and accrued by the plaintiff in the course of her employment with the state of North Carolina. Therefore, the payments made for the vacation and sick leave were due and payable when used by the plaintiff.
 * * * * * * * * * * *
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On June 3, 1998, plaintiff sustained a compensable injury by accident arising out of and in the course of her employment with defendant-employer, an unlooked for and untoward event which was not expected or designed and was an interruption of plaintiff's usual work routine and introduced unusual conditions likely to result in unexpected consequences when as plaintiff was training for an emergency evasive maneuver, her body was placed in an unusual position and engaged in an unusual movement. N.C. Gen. Stat. § 97-2(6).
2. As a direct and proximate result of her compensable injury, plaintiff sustained myxoid degeneration of her medial meniscus of the right leg.
3. From June 6, 1998 through and including June 11, 1998 and from July 18, 1998 through and including September 22, 1998, as a direct result of her compensable injury by accident, plaintiff was incapable of earning wages which she was receiving at the time of her injury at the same or in any other employment. N.C. Gen. Stat. § 97-29.
4. Plaintiff's average weekly wage at the time of her compensable injury by accident was $855.68, yielding the maximum applicable compensation rate of $532.00. N.C. Gen. Stat. §97-2.
5. Plaintiff is entitled to temporary total disability compensation at the rate of $532.00 per week for the period from June 6, 1998 through and including June 11, 1998 and from July 18, 1998 through and including September 22, 1998. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to have defendant-employer provide all medical treatment arising from this injury by accident to the extent it tends to effect a cure, give relief or lessen the period of disability. N.C. Gen. Stat. § 97-25.
7. Defendant is entitled to a credit for the amount of pay received by the plaintiff over the 52 days in which plaintiff received vacation and sick pay, with the credit being based on the $532.00 per week compensation rate. N.C. Gen. Stat. §97-42.
8. Plaintiff is entitled to have vacation and sick leave restored on a dollar-for-dollar basis to coincide with the credit received by defendant in order to reach a fair and just result. The difference in pay received by the plaintiff that is above the $532.00 per week compensation rate shall stand as vacation or sick leave used by the plaintiff in order to maintain her normal salary and shall not be restored.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant-employer shall pay temporary total disability compensation to plaintiff at the rate of $532.00 per week for the period from June 6, 1998 through and including June 11, 1998 and from July 18, 1998 through and including September 22, 1998. This amount has accrued and shall be paid in a lump sum, subject to a reasonable attorney's fee approved in Paragraph 2.
2. A reasonable attorney's fee of 25% of the compensation due under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid by deducting from that sum and paid directly to plaintiff's counsel.
3. Defendant shall receive credit for 52 days at the compensation rate of $532.00 dollars per week.
4. Plaintiff shall have vacation and sick leave restored on a dollar-for-dollar basis to equal the amount of the credit extended to the defendant.
5. Defendant shall bear the costs.
This 1st day of March 2000.
 S/ __________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _____________ CHRISTOPHER SCOTT COMMISSIONER
S/ _____________ DIANNE C. SELLERS COMMISSIONER